**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KAMARIA STRANGE-DAVISON, a.k.a. KAM DAVISON,<br><br>Plaintiff,<br><br>v.<br><br>K. BETTENCOURT,<br><br>Defendant. | No. 2:23-CV-01354-ICD-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil action. Pending before the Court is Defendant's motion for summary judgment. See ECF No. 34. No opposition has been filed.

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial burden, the burden shifts to the opposing party to

establish a genuine issue of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Riggs Mktg. Inc. v. Mitchell, 993 F. Supp. 1301, 1304 (D. Nev. 1997). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . .. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## I. PLAINTIFF'S ALLEGATIONS

This case proceeds on Plaintiff's first amended complaint. See ECF No. 9. Plaintiff names the following as defendants: (1) Sergeant of Classification Unit – K. Bettencourt; (2) Lieutenant of the Solano County Jail – A. Haben; (3) Classification Unit Officer – K. Wilson; and (4) the Solano County Jail. See id. at 1-2. A summary of the complaint can be found in the Court's screening order at ECF No. 10.

## II. DEFENDANT'S EVIDENCE

A statement of undisputed facts supports Defendant's motion, see ECF No. 34-8; Defendant's declaration, see ECF No. 34-2; and the declaration of defense counsel, Philip J. Downs, Jr., see ECF No. 34-1. Attached to Defendant's declaration are Plaintiff's grievance, classification, and disciplinary records from the Solano County jail. See ECF Nos. 34-3 through 34-7. Based on her declaration and those records, Defendant contends that the following facts are undisputed:

> 1. Defendant is a Classification Sergeant employed by the Solano County Sheriff's Office and assigned to the County's correctional facilities.
>
> 2. The correctional officers who work in the jail's housing units are Classification Officers ("Class COs"). Defendant supervises a team of Class COs, but the extent of her supervision is limited by official policy.
>
> 3. Under official policy, Class COs independently exercise their own discretion to determine an inmate's classification level, to investigate misconduct and impose discipline, and to choose inmates for work details. Day-to-day classification, discipline, and work detail decisions do not require Defendant's approval.
>
> 4. Defendant's primary responsibility is reviewing grievances in which inmates challenge Class COs' decisions about classification, discipline, work details, and housing, to ensure that the Class COs acted in accordance with jail policy and Title 15 of the California Code of Regulations.
>
> 5. The grievance process does not result in disciplinary consequences. As a matter of policy, neither the denial of an inmate's request to be reinstated to a work detail nor a finding that a grievance is "unfounded" extends an existing disciplinary sanction or imposes a new one.
>
> 6. Plaintiff filed seven grievances contesting decisions made by various Class COs. Defendant reviewed and investigated each grievance and, in each, found that the Class CO had acted consistently with jail

policy and Title 15.

7. Between January 16 and January 30, 2023, after Class CO K. Wilson removed Plaintiff from her work detail following a January 16, 2023, disciplinary hearing, Plaintiff submitted four requests to Defendant. In the first, Plaintiff requested a housing transfer; in the others, she requested reinstatement to her work detail. Defendant found no reason to justify a transfer and found that Officer Wilson's decision to remove Plaintiff from the work detail was consistent with jail policy.

8. Defendant never disciplined, reclassified, or revoked privileges from Plaintiff, and never directed anyone else to do so.

9. Plaintiff has undergone seven classifications or reclassifications since entering County custody in 2021. Each was made by a Class CO. Defendant did not make or direct any classification decision concerning Plaintiff.

10. Defendant played no role in any investigation, disciplinary hearing, or disciplinary determination concerning Plaintiff. In each instance, a Class CO made the determination and carried out the discipline, including Plaintiff's removal from her work detail.

11. The records do not reflect that any decision by Defendant on Plaintiff's requests or grievances extended or prolonged another officer's decision to discipline, reclassify, or revoke privileges from Plaintiff.

12. Because Defendant had no involvement in Plaintiff's discipline, classification, or loss of privileges, she did not treat Plaintiff less favorably than the other inmates identified in the first amended complaint.

13. Defendant never instructed floor officers, or anyone else, not to rehire Plaintiff to a work detail.

14. On January 16, 2023, after a hearing conducted by Officer Wilson on an incident reported by Officer Peasant, Plaintiff was disciplined for unpermitted "three-way" communications with another inmate. As a sanction, Officer Wilson removed Plaintiff from her work detail. Defendant was not involved in that decision.

15. On February 10, 2023, Plaintiff was moved to the jail's Claybank facility. The same day, another inmate made a complaint against Plaintiff under the Prison Rape Elimination Act ("PREA"), and officers placed Plaintiff in separate housing pending an investigation. Defendant was not involved in the investigation or the related hearing.

16. On February 11, 2023, Plaintiff was moved back to the jail's Downtown facility and placed in a safety cell for mental health observation. Officers later determined that Plaintiff had coerced another inmate to give false PREA information so that Plaintiff could manipulate her housing assignment. At a hearing on February 20, 2023, Officer Wilson found Plaintiff guilty of furnishing false information and temporarily revoked her commissary and social visiting privileges. Defendant was not involved in the investigation, the hearing, or the

> sanction.
>
> 17. On June 18, 2023, Plaintiff fought with another inmate. After a hearing conducted by Officer Wilson, Plaintiff was placed on administrative separation and in disciplinary isolation and lost commissary, television, and telephone privileges. Defendant had no role in the investigation, the hearing, or the sanctions.
>
> 18. On June 26, 2023, after less than ten days of administrative separation, Plaintiff was reclassified to a less restrictive status. Three days later, she was reclassified to a still less restrictive status and returned to general population.
>
> 19. On July 16, 2023, Plaintiff was investigated for threatening another inmate, which led to a disciplinary hearing before Class CO Parrott. Plaintiff was placed on administrative separation pending the hearing and, three days later, was reclassified to a less restrictive status.
>
> 20. By August 14, 2023, Plaintiff had been reclassified to medium security, where she has remained.
>
> 21. Nothing in the records shows that Plaintiff was disciplined, reclassified to a more restrictive setting, or deprived of privileges because Defendant reviewed Plaintiff's grievances.
>
> ECF No. 34-8 at 1-13.

The jail records attached to Defendant's declaration add detail on the events most relevant to Plaintiff's claim. Before January 2023, Plaintiff was classified as medium security and was working as the module worker in her housing unit. See ECF No. 34-5, pp. 13-15. According to the January 16, 2023 incident report, Plaintiff, who was housed at the Downtown facility, had been communicating with an inmate housed at the Claybank facility through letters sent under an assumed name to a third-party address, and through a visitor who relayed messages between the two inmates and connected them by telephone during a video visit. See ECF No. 34-6, pp. 57-59. The report states that communication included strategies for manipulating housing assignments. See id., p. 57.

After a hearing, Officer Wilson found Plaintiff guilty of four rule violations: sending or receiving mail from another inmate without approval (Rule 323); communicating with an inmate in another security status or housing area (Rule 324); sending mail outside official channels (Rule 348); and furnishing false information to staff (Rule 306). See id., pp. 54-55. Plaintiff pleaded guilty to the Rule 324 violation. See id., p. 54. As sanctions, Officer Wilson removed Plaintiff

from her work duties and suspended her visiting and commissary privileges for seven days. See id., p. 55.

Classification notes entered by Defendant show how she handled Plaintiff's requests. On January 16, 2023, Plaintiff asked to be moved to the Claybank facility, and Defendant wrote, "Do not move to CDF at this time." ECF No. 34-5, p. 7. On January 19, 2023, Defendant answered three request slips in which Plaintiff asked for her module worker job back and for a copy of her disciplinary sanction. Defendant noted that Plaintiff was "being denied the module worker position at this time" and that Plaintiff was reissued a copy of the sanction. Id. On January 30, 2023, Defendant answered another request slip: "Denied mod worker position at this time." Id.

Plaintiff's classification history reflects seven classification decisions between December 2021 and August 2023, each made by Officer Posadas, Wilson, Smyth, or Parrott. See ECF No. 34-5, p. 37. Plaintiff was classified as medium security in December 2021. After the June 18, 2023, fight, she was placed on administrative separation pending a hearing; she was then reclassified to general separation on June 26, 2023, and to maximum security on June 29, 2023. After the July 16, 2023, threat, she was again placed on administrative separation pending a hearing; after being found guilty, she was reclassified to general separation on July 19, 2023, and she was returned to medium security on August 14, 2023. See id.

Finally, the grievance records reflect that Defendant provided the first-level response to most of Plaintiff's classification-related grievances in 2023, finding each unfounded or rejecting it as duplicative. See ECF No. 34-3, p. 2. When a grievance named Defendant, a different sergeant responded. See ECF No. 34-4, pp. 55, 79-80. In a response dated March 1, 2023, Defendant addressed Plaintiff's contention that the classification unit had a "vendetta" against her, stating that she found no evidence to support the claim and that Plaintiff had at times been given more opportunities than other inmates, such as her module worker position. See id., pp. 16-17. In a response dated August 14, 2023, Defendant stated that, although Plaintiff had been appropriately classified to general separation, Defendant had encouraged classification staff to interview Plaintiff ahead of her scheduled review, after which Plaintiff was offered placement in medium security based on improved behavior. See id., p. 83.

## III. DISCUSSION

This action proceeds only with Plaintiff's First Amendment retaliation claim against Defendant Bettencourt in Claim II of the first amended complaint. See ECF Nos. 10, 11. The Court found that Claim II states a cognizable claim "for retaliation arising from Plaintiff's allegations of various adverse actions based on Plaintiff having complained about unfair grievance hearings and engaging in allowed communications." ECF No. 10.

Defendant argues that the undisputed evidence shows she took no adverse action against Plaintiff. See ECF No. 34, pp. 9-11. Specifically, Defendant contends that: (1) under jail policy, Class COs (not including Defendant) decide inmates' classification, discipline, and work detail assignments, and every classification and disciplinary decision concerning Plaintiff was made by a Class CO; (2) Defendant never directed any officer to discipline, reclassify, or revoke privileges from Plaintiff, and her grievance decisions did not extend or add to any sanction; (3) Plaintiff's allegation that officers told her Defendant had instructed them not to rehire Plaintiff is inadmissible hearsay and is refuted by Defendant's declaration; and (4) the timing of events defeats any inference of retaliation, because Plaintiff's last request for reinstatement preceded her use of the grievance process, and her restrictions were progressively eased while she was filing grievances. See id. at 3-11. Alternatively, Defendant argues that she is entitled to qualified immunity because no clearly established law would have told a reasonable classification sergeant that declining to reinstate Plaintiff to her work detail, or declining to reverse other officers' disciplinary decisions, violated the First Amendment. See id. at 11-12. For the reasons discussed below, the undersigned agrees that Defendant is entitled to summary judgment on the merits.

### A. Plaintiff's Failure to Oppose

Defendant served Plaintiff with the notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc), and Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), explaining what Plaintiff must do to oppose a motion for summary judgment and the consequences of failing to do so. See ECF No. 34-9. Plaintiff has not filed an opposition. Under this Court's Local Rules, the failure to oppose a motion "may be deemed a waiver of any opposition to the granting of the motion." Local Rule 230(l). Nonetheless, "[a] motion for summary judgment cannot be granted

simply because the opposing party violated a local rule." Martinez v. Stanford, 323 F.3d 1178, 1182 (9th Cir. 2003) (quoting Marshall v. Gates, 44 F.3d 722, 725 (9th Cir. 1995)); see also Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013). Instead, where the non-moving party fails to address the moving party's assertions of fact, the Court may consider those facts undisputed and may grant summary judgment "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3); see Heinemann, 731 F.3d at 917. The Court has therefore independently reviewed Defendant's motion and the supporting record.

Because Plaintiff is proceeding pro se, the Court construes her filings liberally and avoids applying summary judgment rules strictly. See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). The Court also considers as evidence the factual contentions in Plaintiff's pleadings that are based on personal knowledge, set forth facts that would be admissible in evidence, and are attested to under penalty of perjury. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). Plaintiff's first amended complaint is signed under penalty of perjury. See ECF No. 9. The Court has therefore treated it as an opposing declaration to the extent it meets these requirements. Allegations that rest on speculation or belief, however, do not create a genuine dispute of material fact. See Nelson v. Pima Cmty. Coll., 83 F.3d 1075, 1082 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); Fed. R. Civ. P. 56(c)(4).

**B. Legal Standards for First Amendment Retaliation**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). "The filing of an inmate grievance is protected conduct." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). The adverse action "need not be an independent constitutional violation," id., and the plaintiff need not show that her speech was actually suppressed; it is enough that the action "would chill or

silence a person of ordinary firmness from future First Amendment activities," Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Rhodes, 408 F.3d at 568-69).

To prove causation, the plaintiff must show that her protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271 (internal quotation marks omitted). Retaliatory motive may be shown circumstantially – for example, through proximity in time between the protected conduct and the adverse action, evidence that the defendant expressed opposition to the protected conduct, or evidence that the defendant's stated reasons were false and pretextual. See McCollum v. Cal. Dep't of Corr. & Rehab., 647 F.3d 870, 882 (9th Cir. 2011); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995). But "mere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 904-05 (9th Cir. 2014).

As to the fifth element, the plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." Pratt, 65 F.3d at 806. In evaluating the reasons offered for conduct alleged to be retaliatory, courts "afford appropriate deference and flexibility" to prison officials. Id. at 807 (quoting Sandin v. Conner, 515 U.S. 472, 482 (1995)).

Finally, 42 U.S.C. § 1983 requires an actual connection or link between the actions of each defendant and the deprivation alleged. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). "There is no respondeat superior liability under section 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); see also Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (each official "is only liable for his or her own misconduct"). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045; see also Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).

### C. Analysis

Liberally construed, the first amended complaint challenges three categories of conduct as retaliatory: (1) disciplinary sanctions, reclassifications, and privilege revocations that Plaintiff

alleges were longer or harsher than those imposed on other inmates for similar infractions; (2) Defendant's handling of Plaintiff's grievances; and (3) Plaintiff's removal from her work detail and Defendant's refusal to rehire her. The Court addresses each in turn.

1. Discipline, Classification, and Privileges

The undisputed evidence in the record shows that Defendant did not make any of the disciplinary, classification, or privilege decisions of which Plaintiff complains. Under jail policy, Class COs independently exercise their own discretion over inmates' classification levels and discipline. See ECF No. 34-2, pp. 1-2 (¶¶ 3-4). Consistent with that policy, the jail's records reflect that each of the four disciplinary hearings held during the relevant period was conducted by a Class CO – Officer Wilson in January, February, and June 2023, and Officer Parrott in July 2023 – and that each classification decision concerning Plaintiff was made by Officer Posadas, Wilson, Smyth, or Parrott. See ECF No. 34-7, p. 2; ECF No. 34-5, p. 37. The resulting sanctions, including administrative separation, disciplinary isolation, and the loss of commissary, visiting, television, and telephone privileges, were imposed by the hearing officers. See ECF No. 34-2, pp. 5-6 (¶¶ 31, 40, 43). Defendant declares that she had no role in any investigation, hearing, or disciplinary determination concerning Plaintiff and never directed any other officer to discipline, reclassify, or revoke privileges from Plaintiff. See id., pp. 3-4 (¶¶ 11, 14, 16, 18-19).

Defendant's role as the Class COs' supervisor does not, by itself, make her liable for their decisions. See Iqbal, 556 U.S. at 677; Taylor, 880 F.2d at 1045. And there is no evidence that Defendant directed those decisions, or that she knew of and acquiesced in retaliatory conduct by the Class COs. Plaintiff's allegations that Defendant has a "vendetta" against her and makes her punishments longer and harsher than other inmates' rest on belief rather than on facts within Plaintiff's personal knowledge, and speculation does not create a genuine dispute. See Wood, 753 F.3d at 904-05; Nelson, 83 F.3d at 1082. The same is true of Plaintiff's allegation that other inmates received more lenient treatment. Even assuming that other inmates were treated differently, it is undisputed that Defendant did not make the decisions Plaintiff challenges, see ECF No. 34-2, p. 4 (¶¶ 23-25), and nothing in the record ties any disparity to Plaintiff's grievances or communications.

The record also shows that Plaintiff's restrictions were eased, rather than prolonged, while she was actively using the grievance process. Plaintiff was moved from administrative separation to a less restrictive status within eight days in June 2023 and within three days in July 2023, and she was returned to medium security by August 14, 2023. See ECF No. 34-5, p. 37. In responding to one of Plaintiff's grievances in August 2023, Defendant noted that she had encouraged classification staff to interview Plaintiff ahead of her scheduled review, after which Plaintiff was offered placement in medium security. See ECF No. 34-4, p. 83. On this record, no reasonable trier of fact could find that Defendant caused Plaintiff's discipline, classification, or loss of privileges, much less that she did so in retaliation for protected conduct.

2. Grievance Decisions

To the extent Plaintiff contends that Defendant retaliated against her by finding her grievances unfounded and upholding the Class COs' decisions, the claim fails for two reasons. First, Defendant's review of Plaintiff's grievances did not make her responsible for the decisions being grieved. It is undisputed that, under jail policy, denying a grievance neither extends an existing sanction nor imposes a new one, and that none of Defendant's grievance decisions extended or prolonged any sanction, classification, or loss of privileges. See ECF No. 34-2, pp. 2, 4 (¶¶ 6, 20, 22). An official who rejects an administrative complaint about another officer's completed decision does not thereby cause that decision. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation.").

Second, even if the grievance decisions themselves could be considered adverse actions, there is no evidence that Defendant decided Plaintiff's grievances as she did because Plaintiff filed them. Defendant's responses addressed the substance of Plaintiff's complaints, and when a grievance named Defendant, a different sergeant answered it. See ECF No. 34-4, pp. 16-17, 55, 74-75, 79-80, 83, 133-37. Plaintiff identifies no statement by Defendant, departure from the jail's grievance procedures, or other circumstance suggesting that Defendant's decisions were driven by Plaintiff's protected conduct rather than by the merits. Indeed, as noted above, Defendant's August 2023 response to one of Plaintiff's grievances prompted the early review that returned

Plaintiff to medium security. See id., p. 83.

3. Work Detail

Plaintiff's work detail allegations stand on a different footing because, unlike the disciplinary and classification decisions, Defendant personally acted on Plaintiff's requests to be reinstated. Officer Wilson, not Defendant, removed Plaintiff from her module worker position as a sanction following the January 16, 2023, disciplinary hearing. See ECF No. 34-6, p. 55. But Defendant answered Plaintiff's request slips on January 19 and January 30, 2023, and denied Plaintiff the module worker position "at this time." See ECF No. 34-5, p. 7; ECF No. 34-2, p. 3 (¶ 13). The Court assumes, without deciding, that denying Plaintiff's requests for reinstatement was an adverse action. The claim nonetheless fails because there is no evidence from which a reasonable trier of fact could find that Defendant acted because of Plaintiff's grievances, or that her decision did not reasonably advance a legitimate correctional goal.

First, the record does not support an inference that Defendant denied Plaintiff's requests because of Plaintiff's grievances. Defendant denied the requests between January 19 and January 30, 2023. See ECF No. 34-5, p. 7. Plaintiff's 2023 classification and disciplinary grievances were filed beginning on February 11, 2023, see ECF No. 34-3, p. 2, and the grievances Plaintiff identifies in the first amended complaint in connection with this claim were submitted in June and July 2023, see ECF No. 10 at 3-4. Grievances that had not yet been filed could not have motivated Defendant's decisions.

Defendant overstates the point somewhat in asserting that Plaintiff had not used the grievance process at all before her last request. The records reflect that Plaintiff filed a classification grievance in April 2022, which Defendant found unfounded, and a grievance about medical care on January 15, 2023, which another officer rejected. See ECF No. 34-3, p. 2; ECF No. 34-4, p. 2. But nothing connects either grievance to Defendant's January 2023 decisions. The April 2022 grievance preceded those decisions by about nine months, during which Plaintiff continued to work as the module worker. See ECF No. 34-5, pp. 13-15. And there is no evidence that Defendant knew of the January 15, 2023, grievance, which concerned medical staff and was handled by a different officer. Defendant further represents, and the records submitted do not

contradict, that Plaintiff did not renew her requests for reinstatement after she began filing grievances in February 2023. See ECF No. 34 at 11.

Second, Plaintiff's theory that Defendant retaliated against her for her communications with another inmate also fails. The Court assumes, without deciding, that those communications were protected conduct, although they were found to violate four jail rules and Plaintiff offers no evidence that they were approved or otherwise permitted. See ECF No. 34-6 at 54-59. Defendant's stated reason for denying Plaintiff's request was that Officer Wilson's decision to remove Plaintiff from the work detail was consistent with jail policy, and there was no reason to override it. See ECF No. 34-2 at 3. Because that reason is tied to the communications themselves, the dispositive question under this theory is whether her decision reasonably advanced a legitimate correctional goal, and it did.

Officer Wilson removed Plaintiff from her work duties after a hearing at which Plaintiff was found guilty of four rule violations, including communicating with an inmate in another housing area and sending mail outside official channels, and at which Plaintiff admitted one of the violations. See ECF No. 34-6, pp. 54-55. Defendant declined to reinstate Plaintiff within days of that finding. See ECF No. 34-5, p. 7. Declining to set aside a disciplinary sanction so soon after it was imposed serves the legitimate goal of maintaining order and discipline in the jail. Restricting communication between inmates housed in different facilities is, moreover, reasonably related to legitimate security interests. See Turner v. Safley, 482 U.S. 78, 91-93 (1987). That interest was heightened here because, according to the incident report, the communications included strategies for manipulating housing assignments. See ECF No. 34-6, p. 57. Plaintiff bears the burden of showing the absence of a legitimate correctional goal, see Pratt, 65 F.3d at 806, and she offers no evidence that Defendant's stated reason was false or pretextual.

Finally, Plaintiff alleges that Officer Parrott told her Defendant had instructed officers not to rehire Plaintiff "under any circumstances," and that floor officers told her the decision was in Defendant's hands. See ECF No. 10 at 3. Defendant objects that these statements are hearsay, see ECF No. 34, pp. 6-7, and declares that she gave no such instruction, see ECF No. 34-2, p. 4 (¶ 26). Offered to prove that Defendant gave the instruction, Plaintiff's account of what Officer

Parrott told her is hearsay. See Fed. R. Evid. 801(c), 802. Evidence offered at summary judgment need not be in admissible form, but its contents must be capable of being presented in admissible form at trial. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003). Once an objection is made, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendment. Plaintiff, who has not opposed the motion, has not made that showing – for example, by indicating that Officer Parrott would so testify.

In any event, even crediting Plaintiff's account, it would show only that Defendant was responsible for the decision not to reinstate Plaintiff (a fact the classification notes already reflect) and would say nothing about why. Nothing in the record suggests that the decision was motivated by Plaintiff's grievances or communications rather than by the disciplinary finding that led to her removal and, as to any later refusal to rehire her, by her subsequent findings of guilt for furnishing false information to staff in February 2023, fighting with another inmate in June 2023, and threatening another inmate in July 2023. See ECF No. 34-7, p. 2; ECF No. 34-5, p. 37; ECF No. 34-2, p. 6. Plaintiff's belief that Defendant harbors a "vendetta" against her is not enough. See Wood, 753 F.3d at 904-05.

As Plaintiff has not raised a genuine dispute of material fact as to whether Defendant took adverse action against her because of protected conduct, or as to whether Defendant's conduct reasonably advanced legitimate correctional goals, Defendant is entitled to judgment as a matter of law on Plaintiff's First Amendment retaliation claim.

### D. Qualified Immunity

Because the Court concludes that Defendant is entitled to summary judgment on the merits, the Court does not reach Defendant's alternative argument that she is entitled to qualified immunity.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that Defendant's motion for summary judgment, ECF No. 34, be GRANTED.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 8, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE